**Donald Yannella, P.C.**
Attorney at Law
Member of NY & NJ Bars
**233 Broadway, Suite 2370**
**New York, NY  10279**

---

**Tel:  (212) 226-2883**
**Fax:  (646) 430-8379**
**nynjcrimlawyer@gmail.com**

October 17, 2014

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Centre Street
New York, NY  10007

  Re: US v. Kevin Weinstein
     S1 13 Cr. 227 (PGG)

Dear Judge Gardephe:

  I am counsel for Kevin Weinstein, who is scheduled to be sentenced on October 29, 2014.  Mr. Weinstein pleaded guilty to a superseding information charging criminal infringement of a copyright, in violation of 17 USC § 506(a)(1)(A) and 18 USC § 2319(b)(3) and (2).  This misdemeanor offense carries no mandatory minimum term of imprisonment. Pursuant to his plea agreement, Mr. Weinstein signed a consent order of forfeiture in the amount of $165,000.

  The Presentence Report recommends a term of two years' probation and no fine.  Mr. Weinstein respectfully requests a term of one year of probation.  He has already been on Pretrial Supervision for almost two years, and the restrictions hinder his ability to travel, work and function as a parent.

### 1. "the history and characteristics of the defendant," 18 USC § 3553(a)(1)

  Born in 1966, Kevin Weinstein is currently 47 years old.  His childhood was difficult because his parents, whom he describes as polar opposites, divorced when he was five years old.  As the only child of that marriage, Kevin Weinstein was the subject of a custody dispute that lasted for several years.  He attended various schools in Brooklyn, Queens, and Connecticut, while being shuttled back and forth between his parents' homes.

  His father lives in Milford, Connecticut, and does real estate and financial planning.  His mother works as a teacher's aide for the New York City Board of Education.  Mr. Weinstein describes his father as a "by the book conservative" and his mother as a "free spirit."  Both of his parents remarried when he was 7 years old, which complicated matters by introducing step-

parents and step-siblings into the mix. At the age of 12, he was asked to pick which parent he wished to reside with. When he refused to choose, he was sent to live with his mother, but she eventually sent him to his father because his school grades had dropped. Because of the turmoil, Kevin Weinstein saw a psychiatrist once per week for approximately two years after his parents' divorce.

After attending three different high schools in New York City and Connecticut, Kevin Weinstein graduated from Flushing High School in 1985. He attended Queensboro Community College for one year, and then went to the State University of New York, New Paltz. He graduated with a Bachelor of Arts degree in Communications and Advertising in 1990.

Mr. Weinstein's work history has been somewhat sporadic. After college, he joined his step-brother in the clothing business. After that, he was employed at Value Line, where he bought advertising space in newspapers and television. In the late 1990s and early 2000s, he tried his hand in day trading, with modest success. Most recently, he worked part-time as a real estate broker and at a dentist's office, where he does marketing and clerical work. Attached as Exhibit D is a letter from his employer, describing Mr. Weinstein as a reliable employee.

For the past nine years, Kevin Weinstein has resided intermittently with his ex-girlfriend and their daughter. His relationship with that girlfriend started in approximately 1996 and ended by 2000. She was afflicted with ▮▮▮▮▮▮, which left her almost completely disabled. However, she has recovered and is employed once again. Mr. Weinstein explains that his girlfriend is the lease holder to the two-bedroom apartment, and she sporadically kicks him out of the apartment because she "can't stand him." However, he is always invited back.

Kevin Weinstein's daughter was born in 2002, and she attends public intermediate school in Manhattan. They have a very strong relationship and he passed on to her his love of music. His daughter plays four instruments and sings in a choir. Attached as Exhibit A is a letter from the music teach at his daughter's school. She writes that Kevin Weinstein was a volunteer videographer for multiple performing ensembles in large concerts throughout the year as well as smaller concerts for individual grades:

> Kevin Weinstein was our volunteer school videographer for many years
> while his daughter was attending our school. He filmed countless events for
> us, editing and posting the footage on YouTube for all of our parents and
> extended families to view. Many of our families are unable to attend
> concerts during the school day, so without the generous donation of his time
> and talents as a videographer, many of our parents would have missed out
> on seeing their children shine. In addition to recording concerts, he also
> taped plays, talent shows, graduations, and our annual Arts Benefit
> fundraiser. Even after his daughter graduated from PS ▮, Kevin still
> offered his time to us this past fall when we were in need of a videographer
> for our school's ribbon cutting ceremony.
>                              Exh A:  Letter from Public School Music Teacher

Mr. Weinstein has been very active in volunteer work at his daughter's schools. He was

a member of the Parent Teacher Association and the Student Teacher Leadership (which makes decisions for the school), and he helped at fund raisers and during student field trips. Attached as Exhibit B is a certificate commemorating his volunteer work in 2013.

Attached as Exhibit C is a letter from Kevin Weinstein's father, in which he writes:

> Kevin is a complicated and loving person with many positive traits, including trying to make a difference in people's lives. Kevin has become a "Mister Mom" to his ll-year-old daughter. Today, she is a confident, talented and sweet girl thanks to Kevin's love and support. As a loving parent, Kevin has nurtured her interest and ability in music. With his encouragement, she has become proficient in playing the piano and guitar; and has performed in Carnegie Hall with the Manhattan Girls Chorus.... He participates in parent's activities and helps the school PTA. Kevin creates and films school activities and plays.
>                                          Exh. C:  Letter from Harvey Weinstein

Kevin Weinstein's daughter now sings and plays piano and guitar at small venues around New York City. She considers this her musical journey, and Kevin Weinstein is her videographer.

## 2. "the nature and circumstances of the offense" pursuant to 18 USC § 3553(a)(1)

To say that Kevin Weinstein is an avid fan of music would be an understatement. Other than raising his child, nothing brings him greater joy than attending live music concerts. Since he was a teenager, he has attended several concerts per month. He formed close relationships with people throughout the industry, including musicians of all talent levels, employees who handle music equipment and logistics for bands, and workers at various venues. He considers himself part of the family of the music industry.

Between 2011 and 2012, he attended live musical performances and made video recordings without permission from some musicians. He then sold some of those recordings. The stipulated infringement amount is $165,000, which Mr. Weinstein will forfeit.

Although it has no bearing on the infringement amount, it is worth noting that Mr. Weinstein expended ample time and money making and editing his recordings. He wanted to archive the music and preserve it for posterity. When he showed musicians copies of his recordings, they were often grateful for his enthusiasm and his documentary efforts. After factoring in the cost of concert tickets, time spent editing, and the costs of production and mailing, this copyright infringement offense was not a lucrative scheme. It barely broke even.

## 3. to afford "adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant," § 3553(a)(2)(C)

Mr. Weinstein is 47 years old and has never been arrested before. He reports regularly to Pretrial Services, has never had dirty urine, and has not violated the conditions of his release.

The federal prosecution has been exceedingly difficult on Kevin Weinstein. It has created friction in his relationship with his mother and with the mother of his child. He does not use drugs, and he does not commit any other types of crimes. Therefore, there is no need to protect the public from further crimes of Mr. Weinstein. He will never again infringe on a copyright.

With respect to general deterrence, the prospect of federal prosecution and conviction should suffice to dissuade any potential copyright infringer. Anybody who contemplated committing such an offense should be intimidated by the ordeal that Mr. Weinstein has experienced.

### 4. the kinds of sentences available and the Guidelines, § 3553 (a) (3) and (4)(A)

Pursuant to 18 USC 2319(b)(3), the offense carries the following penalties:

- No mandatory minimum term of imprisonment;
- A maximum term of imprisonment of one year, and maximum of one year of supervised release;
- A maximum fine of the greatest of $100,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss, and
- $25 mandatory special assessment.

The plea agreement and the Presentence Report contain identical Guidelines calculations with respect to the offense level.

### 5. Forfeiture and Restitution

In accordance with the plea agreement, Kevin Weinstein admitted the forfeiture allegation and signed a "Consent Preliminary Order of Forfeiture / Money Judgment" in the amount of $165,000.

The issue of restitution is complicated. Mr. Weinstein stipulated in the plea agreement that he would "make restitution in an amount ordered by the Court in accordance with Sections 3663, 3663A, and/or 3664 of Title 18 of the United States Code." In order for restitution to be lawful, there must be identifiable victims who were directly and proximately harmed by Mr. Weinstein's offense. Restitution may not be ordered except when authorized by statute. *See United States v. Helmsley*, 941 F.2d 71, 101 (2d Cir. 1991).

Pursuant to 18 USC 3663A(c)(1)(B), restitution is mandatory for convictions "in which an identifiable victim or victims has suffered a... pecuniary loss." The Mandatory Victim Restitution Act's "primary and overarching purpose ... is to make victims of crimes whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *United States v. Pescatore*, 637 F.3d 128, 139 (2d. Cir. 2011).

Alternatively, pursuant to 18 USC § 3663(a)(1)(A), a sentencing court "may order... in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of

such offense..." In determining whether to order restitution under this section, the Court shall consider:

> (I) the amount of the loss sustained by each victim as a result of the offense; and
>
> (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 USC § 3663(a)(1)(B)(i)

For purposes of restitution, a "victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense..." 18 USC § 3663(a)(2).

"[R]estitution can only be imposed to the extent that the victims of a crime are actually identified." *United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir.2003). As a result, "[a] lump sum restitution order entered without any identification of victims and their actual losses is not permissible." *United States v. Zakhary*, 357 F.3d 186, 190 (2d Cir. 2004).

Loss for the purpose of setting an offense level may involve intended loss. In contrast, loss for the purpose of ordering restitution is limited to actual loss. *United States v. Germosen*, 139 F.3d 120, 130 (2d Cir. 1998); *Hughey v. United States*, 495 U.S. 411, 413 (1990).

Because Mr. Weinstein taped videos of concerts sold those videos to others, he infringed upon the copyright of the musicians. However, this did not necessarily result in "actual loss" to the musicians because, in almost all cases, they were not selling video recordings of their concerts. In essence, Mr. Weinstein found a niche that the musicians were not exploiting.

Some of Mr. Weinstein's customers could be characterized as fitting into four broad categories:

- Individuals who were present at a concert who wanted to preserve their memory of that experience;
- Individuals who were such avid followers of a particular band that they want to collect recordings of every performance by that band;
- Individuals interested in acquiring videos from bands that do not produce or sell recordings of their live performances, and
- Individuals who could not attend concerts, such as people with disabilities or armed service members stationed overseas.

In each of these instances, Mr. Weinstein's sales of video recordings did not cause the bands to sustain "actual loss." Moreover, Mr. Weinstein, contends that his actions constituted "free advertising" for the bands. Some bands that were popular long ago, whose popularity had waned, benefitted from having their recent concerts posted on the internet. Those video clips made people realize that the musicians were still producing quality work, thereby generating

ticket sales for live performances. Members of some of the bands complimented Mr. Weinstein's camera and editing work, which portrayed them in a positive light, and asked for copies for themselves.

Mr. Weinstein's Guidelines offense level was based upon infringement amount, or gross sales figures. The Guidelines calculation was not based on actual or intended loss. Any restitution order must reflect actual losses sustained by identifiable victims, which "in most cases, will consist of the copyright owner's lost profits on sales that would have taken place if not for the infringing conduct." *United States v. Anderson*, 714 F.3d 938, 953 (9th Cir. 2013) (vacating restitution order that was based upon the infringement amount for pirated Adobe software, where there was no evidence that purchasers of the discounted software would otherwise have purchased full-price authentic software from Adobe); *see also United States v. Fair*, 669 F.3d 508 (D.C. Cir. 2012).

Mr. Weinstein is forfeiting $165,000, and he is not trying to shirt his duty to pay restitution if there are identifiable victims who were directly and proximately harmed as a result of his commission of the offense. However, we respectfully request that these arguments regarding lack of "actual loss" be considered both for restitution and for determining a sentence that is "sufficient, but not greater than necessary" to achieve objectives set forth in 18 USC § 3553(a)(2).

**Conclusion**

Mr. Weinstein accepts responsibility for his copyright infringement offense. He learned his lesson, regrets his actions, and will never reoffend. He respectfully requests a sentence of probation.

Mr. Weinstein cannot afford to pay a fine, particularly due to the forfeiture agreement.

Sincerely,

/s/ *[signature]*

Donald J. Yannella, Esq.

# SENTENCING MATERIALS

# UNITED STATES V. KEVIN WEINSTEIN
# 13 Cr. 227 (PGG)

# EXHIBIT A

Sunday, April 12, 2014

To Whom It May Concern:

My name is ▓▓▓▓▓▓. I am currently the music teacher at P.S. ▓▓▓▓▓▓, a public elementary school that is part of the New York City Department of Education. We are located near Times Square in Manhattan. I have a very involved music education program that includes multiple performing ensembles which are featured in large scale concerts throughout the year. My other students in grades K through 5 also perform in about a dozen or more smaller scale concerts throughout the school year. Kevin Weinstein was our volunteer school videographer for many years while his daughter was attending our school. He filmed countless events for us, editing and posting the footage on youtube for all of our parents and extended families to view. Many of our families are unable to attend concerts during the school day, so without the generous donation of his time and talents as a videographer, many of our parents would have missed out on seeing their children shine. In addition to recording concerts, he also taped plays, talent shows, graduations, and our annual Arts Benefit fundraiser. Even after his daughter graduated from PS ▓, Kevin still offered his time to us this past fall when we were in need of a videographer for our school's ribbon cutting ceremony.

Kevin is extremely talented and very generous with his time. He has always supported my music program and our school. I can't imagine how much our school would have had to pay for the hours of footage he shot for free. He has made an incredible difference in the lives of our public school children and families archiving precious moments for them to cherish forever.



PS ▓ Music teacher

▓▓▓▓▓▓@gmail.com

# EXHIBIT B



# Very Important PARENT Award

THIS HONOR IS BESTOWED UPON

**Kevin Weinstein**

in recognition of faithful and devoted service while participating in

The P.S.● Volunteer Program

Awarded at P.S.●

this 24 day of June year of 2013

NO. VA641 ©COPYRIGHT, 2010, HAYES SCHOOL PUBLISHING CO., INC., PITTSBURGH, PA 27-3HTWP8/10

10/13/2014  12:49  12124728551  CANON  #1807 P.001/002

# EXHIBIT C

April 11, 2014

Dear Judge,

I would like to introduce you to my son, Kevin Weinstein:

Kevin is a complicated and loving person with many positive traits, including trying to make a difference in people's lives.

Kevin has become a "Mister Mom" to his 11-year-old daughter. Today, she is a confident, talented and sweet girl thanks to Kevin's love and support.

As a loving parent, Kevin has nurtured her interest and ability in music. With his encouragement, she has become proficient in playing the piano and guitar; and she has performed in Carnegie Hall with the Manhattan Girls Chorus.

Kevin participates in parent's activities and helps the school PTA. Kevin creates and films school activities and plays.

As a person, Kevin has always loved music. As a child, teenager, and college student and in his adult life, Kevin regularly went to concerts, and loves all varieties of music.

Recently, Kevin has supported his personal love of music by taking videos of concerts he loves and attends, and started sharing them with other fans of these groups.

I urged Kevin to stop offering the videos. His response was that the devoted fans of these bands enjoy and benefit from seeing this music. Kevin enjoys bringing excitement and pleasure to these fans.

Among Kevin's fans are military service members who are serving oversea in Iraq and Afghanistan, and fans with disabilities and sicknesses who cannot attend the concerts.

Kevin has found employment and is now working in a dentist office doing administrative and marketing work.

I urge the Court to allow Kevin Weinstein to continue to live at home and continue to provide the necessary love and support for his daughter. Please give him an opportunity to be a productive citizen.

Thank you for your time and consideration.

Respectfully submitted,

*Harvey Weinstein*

Harvey Weinstein
18 Spring Street
Milford, CT 06460

# EXHIBIT D

Dear Judge Gardephe ,

I'm writing this letter to you about one of our employees Mr. Kevin Weinstein. He recently told us of his legal situation and we're shocked and concerned to hear these charges against him. He has been a responsible, dependable,  and helpful asset to our organization. I just wanted to share my thoughts about him in our office with you.

He came to us with an offer of bolstering our patient activity for a new office we opened up last year in midtown Manhattan after we expanded from a modest 15 dentist practice uptown in the upper east side. I admit like any new practice  our office didn't have the ideal patient  flow at the beginning, but Mr. Weinstein made an us offer to work for free for a couple of weeks to see if he could help change that in return for a big discount for his daughters orthodontics  patient responsibility in the near future. If he was able to make a difference. I accepted after hearing his proposal for marketing and ideas with nothing to lose. He was good to his word, as he helped increase our patient flow by over 30% over 6 months and have retained there future care as most have stayed on with us as their primary dentist. His enthusiasm and positive attitude has been contagious in the office  too. We moved him to our primary office uptown now where he is  now responsible  for marketing, dealing with insurance companies, and engaging with patients who particularly have anxiety with dentists because he has a way of soothing their fears. Mr. Weinstein is now on the payroll and a part of our dental family where he is always trying to expand his worth in the office. We just wish he would put in more hours with us, since he is not a full time employee because he has other obligations to take care of his daughter. Hopefully that will change in the future.

I hope this gives you some insight on what type of person Mr. Weinstein is and his value to us. He told us he might be departing our practice soon and I hope this is not the case.  He is a dependable, responsible, and caring person who deserves another chance for his past mistakes.


Sincerely Yours,



Ratna Monga D.D.S.